UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CVETANKA KIROSKA-HARTMAN,**

      Petitioner,

v.                                        Case No. 8:23-cv-2974-MSS-CPT

**MATTHEW TODD HARTMAN,**

      Respondent.

_____

## ORDER

**THIS CAUSE** comes before the Court following a final evidentiary hearing on February 8, 2024. On December 28, 2023, Petitioner Cvetanka Kiroska-Hartman (the "Petitioner") filed a verified Petition Under the Hague Convention for Return of Minor Children to Germany and for Issuance of an Order to Show Cause. ("Petition") (Doc. 1) In the Petition, the Petitioner seeks the return of her minor children, D.H. and K.H., to Germany pursuant to the Hague Convention on the Civil Aspects of Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, *et seq*. On December 28, 2023, the Court granted the Petitioner's motion (Doc. 4) to expedite proceedings and scheduled a final evidentiary hearing for February 8, 2024. (Doc. 7). On January 16, 2024, Respondent Matthew Todd Hartman (the "Respondent"), who appeared *pro se* throughout these

proceedings, filed an Answer (Doc. 22). On January 19, 2024, the Petitioner replied. (Doc. 25)

On January 17, 2024, the Court appointed a Child Psychologist, Dr. Mark Prange, to evaluate D.H. and K.H. in connection with this proceeding. (Doc. 17). On January 18, 2024, the Court appointed a Guardian Ad Litem, Kendrick Donnelly, to represent the minor children and, among other things, to investigate the allegations of the parties and present written and oral recommendations to the court. Mr. Donnelly and Dr. Prange evaluated the evidence, interviewed the children, the Petitioner and Respondent, others, and each prepared a written report, which were filed with the Court and transmitted to the parties. (Docs. 42, 43)

At the final evidentiary hearing on February 8, 2024, the parties submitted their evidence listed on their lists, all of which was received in the record. The parties presented witnesses, including, among others, the Petitioner, the Respondent, family members, the child psychologist, and the Guardian Ad Litem. On the record and outside the presence of the parties, witnesses, and attendees, the Court interviewed the children separately. After the close of evidence and after careful review of the evidence, a thorough study of the reports of the psychologist and the Guardian Ad Litem, a careful assessment of the credibility and testimony of the witnesses, and the interview of the children, the Court ruled on the record at the conclusion of the evidentiary hearing that the Petitioner had established her *prima facie* case for an order of return and that the Respondent failed to establish any exception or affirmative defense.

Accordingly, for the reasons stated in open Court and as set forth in the Verified Petition, the Court makes the following findings of fact and conclusions of law:

## The Hague Convention

The Hague Convention seeks to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, pmbl.; *Hanley v. Roy*, 485 F.3d 641, 644 (11th Cir. 2007). The treaty has two goals: 1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State;" and 2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention, art. 1.

Congress implemented the Convention in the United States by passing the International Child Abduction Remedies Act (ICARA), 22 U.S.C. § 9001 *et seq*. ICARA grants federal district courts jurisdiction to review petitions for return filed by parents whose children have been abducted from their country of habitual residence. Id. at § 9003(a); *see also Fernandez v. Bailey*, 909 F.3d 353, 359 (11th Cir. 2018). In considering a Hague petition, courts are "expressly prohibited . . . from determining the underlying custody issue." *Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014) (internal citations omitted). "The Convention and [ICARA] empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4); see also *Calixto v. Lesmes*, 909 F.3d 1079, 1083 (11th Cir. 2018). A petition under the Convention is "not one for

3

custody, but rather one for return of a child." *Yang v. Tsui*, 416 F.3d 199, 204 (3d Cir. 2005).

Whereas a court deciding custody issues may take into consideration the best interests of the child, a court deciding a Hague Convention petition for return is prohibited from assessing such factors. "[T]he best interests of the child standard applies in custody matters, and . . . custody is not the issue in a Hague Convention case." *Kufner v. Kufner*, 519 F.3d 33, 40 (1st Cir. 2008). "Custody litigation . . . revolves around findings regarding the best interest of the child . . . An adjudication of a Hague Convention Petition focuses on findings of where the child was habitually located and whether one parent wrongfully removed or retained the child. These are distinct determinations." *De La Riva v. Soto*, 183 F.Supp.3d 1182, 1202 (M.D. Fla. 2016) (quoting *Yang*, 416 F.3d at 203). "[T]he Court's task under the Convention is not to decide whether Petitioner is a suitable Respondent or a good spouse, whether granting him custody of [the child] would be an appropriate decision, or whether [the child] would fare better with Respondent." *Aguilera v. De Lara*, 2014 WL 3427528, at *4 (D. Ariz. July 15, 2014). "The Convention['s concerns lie] not with determining the best interests of the child in the long term." *In re B. Del C.S.B.*, 559 F.3d 999, 1013 (9th Cir. 2009) (emphasis removed).

In fact, 'best interests of the child' has a significantly different meaning in the context of the Hague Convention. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20 (2010).

"Ordering a return remedy does not alter the existing allocation of custody rights, but does allow the courts of the home country to decide what is in the child's best interests. It is the Convention's premise that courts in contracting states will make this determination in a responsible manner." *Id.* (internal citations omitted).

Thus, it is not within a district court's purview, when assessing a petition for return under the Convention, to assess a child's best interests or any concerns relating to custody matters; rather, the court serves "as a gatekeeper [to decide] which of the contracting states is the proper forum in which the issue of custody should be decided." *Calixto*, 909 F.3d at 1083 (quoting Seaman, 766 F.3d at 1257). "The determination of future well-being is left to the court conducting custody proceedings. A petition brought under the Hague Convention . . . merely seeks to establish in which country that custody proceeding may take place." *In re B. Del C.S.B.*, 559 F.3d at 1013. Indeed, the Eleventh Circuit has recognized the danger if a court conflates these two distinct charges: "there is the concomitant possibility that . . . a court will inadvertently and improperly take child custody issues (like the best interests of the child) into account in a Convention proceeding." *Fernandez*, 909 F.3d at 362.

**I.     The Petitioner Established a Prima Facie Case for an Order of Return**.

As an initial matter, there are two "threshold" requirements for establishing a wrongful retention under the Convention: age and contracting status of the States. Convention, art. 4; *De La Riva*, 183 F.Supp.3d at 1189. Both are satisfied in this case.

5

D.H. and K.H. are under the age of sixteen, and the United States and Germany are signatories to the Hague Convention.

To establish a prima facie case for an order of return under the Hague Convention, the Petitioner had to show (1) that Germany is the country of habitual residence of the children, (2) that removal or retention of the children was in breach of the Petitioner's rights of custody, and (3) that the Petitioner was exercising her rights of custody when the Respondent wrongfully removed or retained the children in the United States. Hague Convention art. See *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (citing 22 U.S.C. § 9003(e)(1)(A)). Based on the competent, substantial evidence presented at the hearing and for the reasons stated on the record, the Court finds that Germany is the habitual residence of the children, that the removal and retention of the children was in breach of the Petitioner's rights of custody, and that the Petitioner was actually exercising her rights of custody when the Respondent wrongfully removed or retained the children in the United States.

## II. The Respondent Fails to Establish an Exception to an Order of Return.

Because the Petitioner established her *prima facie* case, the Respondent bore the burden to demonstrate an exception or affirmative defense to an order of return. At the hearing, the Respondent attempted to demonstrate three exceptions or affirmative defenses to the return of the children: the well-settled exception under Article 12 of the Hague Convention, the "grave risk of harm" exception under Article 13(b) Hague Convention, or the "mature child" exception under Article 13 of the Hague Convention. The Respondent failed to establish any exception or affirmative defense.

### A.   The well-settled exception is inapplicable as a matter of law.

Under Article 12(b), the Respondent could demonstrate that the children are "now settled in [their] new environment" as a defense to return only if more than a year had elapsed since the date of the Petition. Here, there was no dispute that the children were wrongfully removed in August 2023 and the Petitioner commenced the instant proceeding in December 2023. Thus, as a matter of law, the Court found that this defense was inapplicable.

### B.   The Respondent fails to demonstrate a "grave risk of harm."

Under Article 13(b) of the Hague Convention, the Court "is not bound to order the return" if the Respondent demonstrates "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." The alleged harm must be a "great deal more than minimal" and "not merely serious," *see Gomez v. Fuenmayor*, 812 F.3d 1005, 1012 (11th Cir. 2016). Under 22 U.S.C. § 9003(e)(2)(A), this affirmative defense must be established by "clear and convincing evidence." The Respondent has failed to meet his burden. Based on the evidence presented and for the reasons stated at the hearing, the allegations of physical harm, psychological harm, and placement in an intolerable situation are not substantiated and not credited.

As found at the hearing, there is insufficient evidence to establish that Petitioner or her partner have been abusive at all to the children, and no evidence was offered to prove a "grave risk" of physical or psychological harm. Specifically, K.H., the older child, recounted one time his mother hit him with her fist, along with other times he

7

claimed his Mother hit him with an open hand. D.H., the younger child, claimed he was hit by his mother a handful of times. K.H. also relayed one incident where he claimed that the Petitioner's boyfriend hit him on the shin with a metal water bottle after the child put his leg on an armrest between the two front seats of the car they were traveling in at the time. D.H., however, stated that the Petitioner hit both children with a metal water bottle. Each child contended they were hit with a metal water bottle by Petitioner on one or more occasions. Each child also recounted being demeaned by the Petitioner and being locked in their fifth-floor apartment for as long as a few hours of the day on a few occasions and having their electronic devices taken from them. Most of these events coincided with the arrival of the Mother's partner in their lives, which they and the Respondent resented, and most of these events occurred after K.H. had learned of and discussed the Hague Convention defenses and discussed them with the Respondent. Finally, the recitations of the young children seemed collusive and rehearsed and were offered haltingly at times, suggesting a lack of credibility. Importantly, none of these incidents were established by "clear and convincing evidence." There was no physical evidence offered, by the way of photographs, for example, of any of the alleged bruises the boys claim to have suffered. However, even if the incidents were established by "clear and convincing evidence," they fail to rise to the level of "grave risk" of physical and psychological harm as set forth in the body of case law regarding return orders under the Hague Convention.

      Further, the Court carefully reviewed the reports of the Guardian Ad Litem and the child psychologist and concurs with their conclusions, supported by their

testimony, that there is no "grave risk" that returning the children would expose either "to physical or psychological harm or otherwise place the child[ren] in an intolerable situation." Hague Convention art. 13(b). Based on the competent, substantial evidence presented and for the reasons stated on the record, the Court finds that the Respondent failed to meet his burden.

    **C.    The Respondent fails to demonstrate a "mature child objection" that is not the result of the Respondent's undue influence.**

Article 13 also provides the Court with discretion to "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which is appropriate to take account of its views." Convention, art. 13. When determining whether this exception applies, the Court must consider: "(1) whether the child is sufficiently mature; (2) whether the child has a particularized objection to being repatriated; and (3) whether the objection is the product of undue influence." *Romanov v. Soto*, No. 3:21-cv-779, 2022 WL 356205, at *7 (M.D. Fla. Feb. 7, 2022). Regardless of whether the child is sufficiently mature, the Court should not consider a child's objection when "a child's desire to remain or return to a place is 'the product of undue influence.'" *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 279 (3d Cir. 2007).

The Respondent again has failed to meet his burden. The Court considered the competent, substantial evidence, assessed the testimony of the witnesses, and studied the reports and testimony of the Guardian Ad Litem and child psychologist. Upon the Court's examination of D.H. and K.H., it was evident that the Respondent had

9

discussed the Hague Convention and its defenses with D.H. and K.H. In fact, K.H. was able to clearly articulate the three defenses his Respondent asserted in the proceedings in a way that a 12-year-old should not be able to. K.H. admitted that he had researched the Hague Convention. The testimony also established that the Respondent encouraged, concealed, and did not prevent D.H. and K.H.'s participation in the Respondent's plan to remove the children wrongfully from their habitual residence in Germany and that he conspired with his family to keep the plan a secret from the Petitioner. The Respondent admitted that he advised D.H. and K.H. he would never see them again if they are returned to Germany because he feared returning due to a risk of possible imprisonment because of Petitioner's actions in reporting his wrongful removal of the children. The Court therefore finds that, because of these and other reasons evidenced in the record, any stated preference by D.H. or K.H. is the result of full and thorough undue influence by the Respondent and the circumstances created by the wrongful removal and retention of the minor children.

## CONCLUSION

Because D.H. and K.H. were wrongfully removed from Florida and because the Respondent failed to demonstrate any exception or affirmative defense under the Hague Convention, the Court hereby **ORDERS**:

1. The Petition is **GRANTED**;

2. D.H. and K.H. are **ORDERED** to be returned to the Petitioner **IMMEDIATELY**;

  a. Counsel of record for the Petitioner, Paul A. McDermott, Daniel A. Silver, Avery A. Holloman, and Lauren R. Robertson are **AUTHORIZED** to retrieve D.H. and K.H. from the Respondent and to accompany D.H. and K.H. on a return flight to Germany;

  b. At least one counsel of record for Petitioner **MUST** accompany D.H. and K.H. throughout a direct flight from Tampa International Airport to Frankfurt Airport, Germany, to depart **no later than FEBRUARY 11, 2024**;

  c. The Guardian Ad Litem, Kendrick Donnelly, is **AUTHORIZED** to accompany counsel during the retrieval of D.H. and K.H. from the Respondent and to accompany the children and counsel of record through the Transportation Security Administration and to the departing gate at Tampa International Airport;

  d. The Respondent is **ORDERED** to release D.H. and K.H. to the Guardian Ad Litem and to counsel of record for the Petitioner by **2:00 P.M. on FEBRUARY 11, 2024**, for transit to Tampa International Airport.

  e. All federal, state, and local authorities are hereby notified that counsel of record for the Petitioner and the Guardian Ad Litem are **AUTHORIZED** to retrieve D.H. and K.H. from the Respondent, to transport D.H. and K.H. to Tampa International Airport, and to accompany D.H. and K.H. on the flight to Germany.

3. The Respondent's failure to comply with, violation of, or attempt to evade or elude **ANY** provision of this order will, among other things, result in **IMMEDIATE** instruction to the United States Marshals Service to cause the transit of the children to Tampa International Airport and onto a departing flight to Frankfurt, Germany. If the Respondent resists compliance with this order, the United States Marshal is authorized to enter 215 Valencia Blvd. Condo 113, Belleair Bluffs, Florida 33770 to execute this order. The United States Marshal is authorized to use reasonable force to execute this order and to arrest any person who impedes the execution of this order.

4. All parties, counsel of record, and the Guardian Ad Litem are authorized to reveal the names, birthdates, and other personal identifying information about K.H. and D.H. as necessary to effectuate this order;

5. Jurisdiction is **RETAINED** to effectuate this order and any other related proceeding.

**DONE** and **ORDERED** in Tampa, Florida, this 9th day of February 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person